**No. 12-60753**
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**
_____

**LISA CARPENTER MOONEY**
*Plaintiff-Appellant*

**VERSUS**

**LAFAYETTE COUNTY SCHOOL DISTRICT**
*Defendant-Appellee*
_____

**BRIEF OF APPELLANT LISA CARPENTER MOONEY**
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

Michael P. Mills, Chief United States District Court Judge

JIM WAIDE
MISSISSIPPI BAR NO. 6857

Waide & Associates, P.A.
332 North Spring Street
Post Office Box 1357
Tupelo, MS 38802
Telephone: (662) 842-7324
Facsimile:  (662) 842-8056
Email: waide@waidelaw.com


Attorneys for Appellant

30868.1

**No. 12-60753**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**LISA CARPENTER MOONEY**
*Plaintiff-Appellant*

**VERSUS**

**LAFAYETTE COUNTY SCHOOL DISTRICT**
*Defendant-Appellee*

_____

**CERTIFICATE OF INTERESTED PERSONS**

_____

The undersigned counsel of record for Appellant Lisa Carpenter Mooney

certifies that the following listed persons have an interest in the outcome of this case.

These representations are made in order that the Judges of this Court may evaluate

possible disqualifications or recusal pursuant to Rule 13.6.1 of the United States Court

of Appeals for the Fifth Circuit.

1.    Lisa Carpenter Mooney, Appellant;

2.    Jim Waide, Counsel for Appellant;

3.    Waide & Associates, P.A., Counsel for Appellant;

4.    Lafayette County School District, Appellee; and

4.    Stephen Pierce Spencer, Counsel for Appellee.

_/s/ **Jim Waide**_

JIM WAIDE

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Because this case presents a novel issue regarding the type of circumstantial evidence  necessary to prove retaliation, oral argument is warranted.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi-vii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        THERE ARE ISSUES OF MATERIAL FACT AS TO WHETHER THE
        DECISION TO FIRE MOONEY WAS MOTIVATED, IN PART, BY
        HER SUPPORT OF THE SUPERINTENDENT'S OPPONENT OR BY
        HER OPPOSITION TO SEX DISCRIMINATION OR BY BOTH.

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

CASES:

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . 7-8, 16

*Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998) . . . . . . . . . . . . . . . . . 9

*Brady v. Houston Independent School Dist.*, 113 F.3d 1419 (5th Cir. 1997) . . . . 10

*Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . 11

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) . . . . . . . . . . . . . . . . . . . 11, 14-15

*E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393 (5th Cir. 2007) . . . . . . . . . . . 6

*Furnco Const. Corp. v. Waters*, 438 U.S. 567 (1978) . . . . . . . . . . . . . . . . . . . . . 15

*Hunt v. Cromartie*, 526 U.S. 541 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007) . . . . . . . . . . . . . . . . 10

*Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274 (1977) . . . . 16-17

*Nowlin v. Resolution Trust Corp.*, 33 F.3d 498 (5th Cir. 1994) . . . . . . . . . . . . 8, 10

*Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) . . . . . . . . . . . . . . . . . . 14

*Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130
(5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004) . . . . . . . . . . . . . 8, 17

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) . . . 7-8, 14, 17

*Richardson v. Prairie Opportunity, Inc.*, 2012 WL 1429451 (5th Cir. 2012) . . . 14

*Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500 (1957) . . . . . . . . . . . . . . . . . . . 11

*Sioux City & P. R. Co. v. Stout*, 84 U.S. 657 (1873) . . . . . . . . . . . . . . . . . . . . . . . 16

*Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . 10, 17

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . 8-9

*Swanson v. General Services Admin.*, 110 F.3d 1180 (5th Cir. 1997) . . . . . . . . . 14

*Tennant v. Peoria & P. U. Ry. Co.*, 321 U.S. 29 (1944) . . . . . . . . . . . . . . . . . . . . . 8

*U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711 (1983) . . . . . . 10, 15

*Vaughn v. Woodforest Bank*, 665 F.3d 632 (5th Cir. 2011) . . . . . . . . . . . . . . . . . 17

## OTHER CITATIONS:

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

42 U.S.C. § 2000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## <u>STATEMENT OF JURISDICTION</u>

The district court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  This Court has jurisdiction over this appeal from the final judgment under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

1.    Whether temporal proximity between protected activity and an adverse employment action is the only circumstantial evidence that is sufficient to prove retaliation?

## STATEMENT OF THE CASE

This is an appeal of a grant of summary judgment in favor of Defendant School District on the claims of Lisa Mooney that she was non-renewed from her position as an assistant principal, because she refused to support the superintendent's political campaign and because she opposed sex discrimination.

## STATEMENT OF THE FACTS

Plaintiff/Appellant Lisa Carpenter Mooney (hereinafter "Mooney") was hired by the Defendant/Appellee Lafayette County School District (hereinafter "Defendant") as a speech pathologist in 2001. R. 214. Mooney worked in that position at the Lafayette Elementary School under Principal Margaret Boyd until May 2006,[1] when Boyd asked Mooney to move up to an assistant principalship job, R. 102, based upon Mooney's ability and work ethic. R. 215. Boyd had observed Mooney's work performance as a speech pathologist and determined that Mooney would be a good administrator. R. 223-24. According to Boyd, Mooney was promoted because "she had a very good demeanor with parents." R. 224-25. Mooney had just received a state award for being a "top ranked administrator and exceptionally organized." R. 105.

---

[1] Under Mississippi law, "licensed employed," such as teachers and administrators, are hired under one-year contracts, which come up for renewal every spring. See Miss. Code Ann. § 37-9-101, et seq. Employees whom a school district wishes to terminate will be terminated in the spring of each year. Once a contract is renewed, "just cause" is required for the employee to be terminated during the contract term. Miss. Code Ann. § 37-9-51.

The year 2007 – Mooney's first year under an assistant principal's contract – was an election year. R. 245. The incumbent superintendent, Mike Foster, was running against Carolyn Davis, a special education teacher. During Foster's campaign, the assistant superintendent, Ben McClung, asked teachers within the district to donate money to Foster's campaign and to allow their names to be listed on campaign advisements endorsing Foster. R. 215-16. Mooney declined to endorse Foster in the advertisements, and supported the challenger, Carolyn Davis. R. 215-17.

Boyd knew that Mooney was supporting Davis. R. 236. Assistant Superintendent McClung and Principal Boyd discussed this fact. R. 239. Principal Boyd testified:

> Q. Did you ever have a conversation with Ben McClung regarding whom Ms. Mooney supported in that 2007 superintendent election?
> A. I think I did, yeah.
> Q. Tell me about that.
> A. I don't remember details of it other than that Ms. Mooney was supporting Ms. Davis and I was supporting Mr. Foster. Specifics of that conversation, I really don't remember.
>       * * *
> Q. How did it come up that you and the assistant superintendent were discussing whom Ms. Mooney supported in the election?
> A. I don't know how it came up, you know. You know, as kind of a general, "We all need to -- if you want Mike to get elected, we all need to support him." That kind of thing.
> Q. Did you ever hear Mr. McClung refer to Ms. Mooney as a, quote, Carolyn fan, closed quote?
> A. I don't know those specific words, but I think that that was

probably the gist of a conversation.

Q.   He's talking about Ms. Mooney and saying with maybe not those words, but he's indicating that she supports or supported Carolyn Davis against Mike Foster?

A.   Right.

R. 260-61.

Mooney also refused McClung's request that Mooney file a complaint against Davis to be placed in Davis' personnel file. R. 216-217. Writeups were being put in Davis' personnel file to be used in the campaign. R. 218-19. McClung and Foster were jointly trying to "get a file" on Davis. R. 219-20. McClung was collecting campaign contributions for Foster, R. 106, and asking schoolteachers to purchase ads endorsing Foster. R. 215-16.

Foster won reelection in 2007. Boyd claimed that, to her surprise, R. 229, either that same year (2007) or early the next year (2008), Mooney's performance suddenly deteriorated. R. 226-27; 236-38. Although Mooney had just been promoted the year before the election because of her ability to deal with parents, Boyd testified Mooney began to have problems with parents and with attendance and punctuality in 2007 or early 2008. R. 227-29. However, no complaints about Mooney's performance were mentioned to Mooney until May 2009. R. 254.

Foster testified that he had a discussion with Boyd about demoting Mooney back to a speech pathologist position, R. 248, and replacing her with an assistant principal, Hendrix, a male. R . 248. Mooney was first told in 2009 that she was going

to be demoted for budget reasons.  When she requested a reason be given in writing, she was told that the reason was a problem with her performance.  R. 254.  Mooney then sent a memorandum to Boyd denying any performance problems, describing parent surveys which demonstrated that the parent satisfaction ratio at her school was equal to or better than any other school in the district, and documenting a decrease in disciplinary problems at the school since she had been assistant principal.  R. 254.  Mooney's memorandum noted that her education level (a specialist's degree) and her experience exceeded male administrators and asked whether the demotion was really "because I am a woman."  R. 254.

Following this May 2009 memorandum of protest by Mooney, R., 254,[2] Foster decided to rescind Mooney's demotion, and, in lieu of the demotion, placed her on a performance improvement plan.  R. 249-51.  According to Defendant's brief in support of its motion for summary judgment, "Boyd recommended removing Plaintiff in 2009, but ... instead [Foster] convinced Boyd to put Mooney on an improvement plan..."  R. 179.  Foster testified that he was sure her complaint of gender discrimination "weighed in the process."  R. 251.

Boyd testified that she had told Mooney that Mooney's performance under the performance improvement plan (2009-2010) was "pretty good."  R. 241.  However, during the year of the performance improvement plan, 2009-2010, a parent filed a

---

[2]  This memorandum is found in the record excerpts at Tab 7.

notice of claim[3] against Defendant because Mooney and another teacher[4] had strip-searched her son in an attempt to find an item of property they believed the student had stolen.  R. 153-54.  The student had been caught stealing on four previous occasions.  R. 154.  Mooney was reprimanded because of performing the strip search on the student.  R. 152.

Defendant attached to its summary judgment materials a copy of what appears to be a clock-in/clock out report showing numerous times during the 2009-2010 school year, when Mooney had clocked in after 7:15 a.m., and numerous times when she had not checked in at all.  R. 157-61.  The record contains no evidence that Superintendent Foster ever saw that time record before he notified Mooney she would be non-renewed.  There is also no evidence in the record that Mooney was ever told she had to be at work at 7:15 a.m., or that other administrators were required to be at work at that time.  Despite the huge number of tardies listed in the clock-in/clock-out record, there is no evidence that Mooney was ever told during the 2009-2010 school year that there was a problem with her attendance.

In March 2010, Foster decided a cut back of employees was necessary because

---

[3]  Under Mississippi law, a "notice of claim" is a prerequisite to filing a tort suit against a governmental entity.  Miss. Code Ann. § 11-46-1, et seq.  There is no evidence any suit was ever filed.

[4]  Since only assistant teachers were fired as part of the district's cuts, it is a fair inference this teacher was not fired.

of a decrease in the district's budget.  Superintendent Foster decided that he would

allow the principals at the various schools to choose which employees to cut.  R. 120.

In response to Foster's request to tell him whom to cut, Boyd, on March 24, 2010,

wrote Foster, giving him a list of persons to be cut at Lafayette Elementary School.

The list contains only assistant teachers and does not list Mooney.  R. 150.  In her

memorandum to Foster, Boyd stated that these are "[t]he choices I have made [which

would] have the least impact on classroom instruction and student achievement."  R.

150, Record Excerpts, Tab 5 (Exhibit E to Defendant's Motion for Summary

Judgment).  Foster, however, did not follow the principal's list of whom to cut.

Instead, Foster wrote Mooney on May 5, 2010, telling her that she was being non-

renewed because of the budget cuts and because of performance problems.  R. 257,

Record Excerpts, Tab 8.

## STANDARD OF REVIEW

"This court reviews a district court's grant of summary judgment de novo,

applying the same standards as the district court."  *E.E.O.C. v. WC&M Enterprises,*

*Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).  Like the trial court, this Court must "refrain

from making credibility determinations or weighing the evidence."  *Id.* at 398.  This

Court views all of the facts in the light most favorable to the non-moving party and

draws all reasonable inferences in its favor.  *Id.*  Summary judgment is inappropriate

if evidence is such that disputed issues and inferences could be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986). Moreover, Defendant cannot credit the evidence of the movant except to the extent that it is evidence that is so clear that the jury is required to believe it. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000).

## SUMMARY OF THE ARGUMENT

Mooney worked for four years as an ideal employee as a speech pathologist. Her work was so excellent that her principal suggested that she be elevated to an assistant principal's position. There is no evidence of any claim of bad performance until Mooney openly supported the superintendent's opponent in the 2007 election. Defendant claims Mooney's performance declined in late 2007 or early 2008. But Defendant never told Mooney she had a decline in performance until May 2009 and, only then, when Mooney requested to know, in writing, why she was being told she was going to be demoted back to her former speech pathology position for performance reasons. R. 254. When Mooney protested that demoting her would be "sex discrimination," the superintendent then rescinded the demotion and put her on a performance improvement plan. R. 249-51. During the year of the performance improvement plan – 2009-2010 school year – Defendant had to cut personnel due to budget cuts. Foster testified that his plan was that the principal at each school would

determine who to choose for the budget cuts. Boyd did not choose Mooney for the budget cuts, but sent a list of assistant teachers as persons to be cut. Foster terminated her anyway, assigning as reasons both the budget cuts and performance problems.

From all of this evidence, a jury could reasonably infer either that the reasons being given for Mooney's being terminated were pretextual, see *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000), or that retaliation was the more likely reason. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004).

It is true that Defendant has, in fact, documented Mooney's strip-searching a student during the last year of her employment, and has also produced time records showing problems with attendance. The comparative weighing of conflicting and inferences, however, is a core jury responsibility. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). It is for the jury to "select from among conflicting inferences and conclusions that which it considers most reasonable." *Tennant v. Peoria & P. U. Ry. Co.*, 321 U.S. 29, 35 (1944). As stated in *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994): "Employers rarely leave concrete evidence of their retaliatory purposes and motives... This analysis is highly fact specific, as the Supreme Court recently noted. *St. Mary's,* 509 U.S. at ----, 113 S.Ct. at 2756[5] ("the question facing triers of fact in discrimination cases is both sensitive

---

[5] *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

and difficult").

Whether retaliation or poor performance is the real reason for Mooney's termination should have been left for a jury's termination.

## ARGUMENT I.

**THERE ARE ISSUES OF MATERIAL FACT AS TO WHETHER THE DECISION TO FIRE MOONEY WAS MOTIVATED, IN PART, BY HER SUPPORT OF THE SUPERINTENDENT'S OPPONENT OR BY HER OPPOSITION TO SEX DISCRIMINATION OR BY BOTH.**

A governmental employee's political support of or opposition to a candidate for public office is a matter of public concern and is protected by the freedom of speech provisions of the First Amendment of the United States Constitution. *Brady v. Fort Bend County*, 145 F.3d 691, 707 (5th Cir. 1998). A plaintiff may show his First Amendment free speech rights were violated by proving that his speech was a motivating factor for an adverse employment action, even if other factors also contributed. *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 287 (1977).

Discharging an employee because of her "opposition" to sex discrimination is, itself, illegal. 42 U.S.C. § 2000e-3(a). As is true of First Amendment retaliation cases, a Title VII retaliation case may be proved by showing that retaliation was a

motivating factor in the employment decision, even if there were also other factors. *Smith v. Xerox Corp.*, 602 F.3d 320, 326 (5th Cir. 2010).

To prove a *prima facie* case of retaliation, a plaintiff need only show (1) she participated in a protected activity, (2) she experienced an adverse employment action and (3) there was a causal connection between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). This causal connection may be shown by any evidence that would support an inference that the adverse employment action was because of a protected activity. *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981).

"Employers rarely leave concrete evidence of their retaliatory purposes and motives." *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 507 (5th Cir. 1994). There will "seldom be 'eyewitness' testimony as to the employer's mental processes." *U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983). Therefore, a plaintiff may prevail on a retaliation claim with circumstantial evidence; that is, by showing a chronology of events from which retaliation may plausibly be inferred. *Brady v. Houston Independent School Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997). A jury question is presented in a Title VII retaliation case when circumstantial evidence is presented from which a causal connection may reasonably be inferred. *Coleman*

*v. Donahoe*, 667 F.3d 835 (7th Cir. 2012). Direct evidence is not required to prove intentional discrimination, particularly since "circumstantial evidence is not only sufficient, but also may be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003), citing *Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 508, n. 17 (1957).

This case presents a chain of circumstances that would permit a jury to infer either that Defendant retaliated because of Mooney's opposition to Foster's political campaign or to infer her opposition to perceived sex discrimination played a part in her not being renewed, or that both of these protected activities contributed.

Defendant now asserts that Mooney's performance dramatically deteriorated but it claims this occurred either in 2007 (when the campaign was actually going on) or early 2008 (immediately after the campaign concluded). A jury might reasonably find this claim of bad performance to be suspect because Defendant never told Mooney about this alleged decline in performance before May 2009. Mooney was then told she was going to be demoted from her assistant principalship position, R. 254, but it this was only after Mooney asked for the reasons to be put in writing. See first paragraph of Mooney Memorandum to Boyd, R. 254, Record Excerpts, Tab 6.

When Defendant finally claimed poor performance in May of 2009, Mooney responded with her memorandum, which made a specific and credible argument that

her performance was good, and that the problems with discipline or "parents," which Defendant was claiming, did not exist. R. 255. Mooney also pointedly asked "[w]hy are you waiting until now to bring this issue up" and that "[i]f there had been a problem, it should have been discussed with me and me given a chance to improve." R. 255. The memorandum also discussed an email she had received from Boyd dated May 16, 2008, when Boyd had stated that Mooney "does an excellent job and [Boyd] would not be able to do my job without her support." *Id.*

The May 21, 2009 memorandum clearly states Mooney believes she has been the victim of sex discrimination.

> In our conversation on May 13, 2009, you stated Adam Pugh may be going to South Pontotoc leaving an administrative opening in the district. I have also learned from another source that Rodney Flowers may be moved to fill Adam's position. Since a man is being moved to m y position, is it because I am a woman that I am not being transferred to another administrative position in the district? I have a specialist degree in administration which more than qualifies me for any administrative position in this district, unlike most of the district's administrators, who only have a mater's degree. When a Reduction In Force (RIF) occurs, the last hired is the first to go. I am not the last administrator hired into the Lafayette County School District. Scott Haley, Assistant principal at the high school, was hired into the district this school year. Is Scott Haley, a first year administrator in this district, also being transferred back to the classroom?

R. 255.

Asked whether Mooney's May 21, 2009 complaint of gender discrimination was related to the decision to rescind the demotion and to put Mooney on a

performance improvement plan, Superintendent Foster responded that "I'm sure it weighed in the process somewhere," and that "I'm not going to sit here and say it didn't." R. 251. Boyd testified that during the performance improvement plan she had told Mooney that her performance was "pretty good." R. 241.

Defendant has produced a time clock list, indicating numerous instances of Mooney's clocking in after 7:15 a.m. or not clocking in at all, but Defendant has produced no evidence that during the 2009-2010 school year it ever warned Mooney that she was not meeting expectations of the performance improvement plan or that there was a continuing problem with her performance.

Foster testified that he directed the principals to choose employees for the budget cuts. R. 120-23. In Mooney's case, however, this procedure was not followed. Boyd wrote Foster choosing assistant teachers and a school monitor for the cuts at the elementary school. R. 150, Record Excerpts, Tab 5. Boyd testified that she chose these employees, and presumably not Mooney, because cutting these employees would have the "least impact on classroom instruction." *Id.* Foster disregarded this memorandum from the school principal, who would have been more familiar with Mooney's performance than he, and notified Mooney of her non-renewal. R. 257. Foster's explanation for cutting Mooney (allowing the principal to decide), having "been eliminated, [retaliation] may well be the most alternative explanation." *Reeves,*

530 U.S. at 147-48.

The heart of the district court's reasoning for granting summary judgment is lack of "temporal proximity." Opinion, p. 7, R. 347. The district judge noted it had been three years from the time of the election until Mooney's termination and it had been one year from the time she complained of sex discrimination until her termination. He found such a lapse of time "is fatal." Opinion, p. 12, R. 352.

It is quite true that showing temporal proximity between a protected activity and an adverse employment action is <u>one</u> method of circumstantial proof.[6] But no authority holds that temporal proximity is the <u>only</u> method for using circumstantial evidence to prove employment discrimination. Such a holding is fundamentally inconsistent with the settled principle that showing pretext in an employment case may "take a variety of forms." *Patterson v. McLean Credit Union*, 491 U.S. 164, 188 (1989). "[Plaintiff] is not limited to presenting evidence of a certain type." *Id.* In holding circumstantial evidence is sufficient to prove employment discrimination, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003), never hinted that the court would limit circumstantial evidence to a particular type of circumstantial evidence:

The reason for treating circumstantial and direct evidence alike is both

---

[6] As put in *Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997): "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." Accord, *Richardson v. Prairie Opportunity, Inc.*, 2012 WL 1429451, *4 (5th Cir. 2012).

clear and deep rooted: "Circumstantial evidence is not only sufficient, but also be more certain, satisfying and persuasive than direct evidence."

539 U.S. at 100.

Temporal proximity evidence cannot be the exclusive means of proving discrimination because proof in discrimination cases should never be "rigid, mechanized, or ritualistic." *Furnco Const. Corp. v. Waters*, 438 U.S. 567,675-76 (1978). "[T]he facts necessarily will vary in Title VII cases, and ... the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *Id.*

Defendant has produced evidence of poor performance since it has produced evidence of a parental complaint about Mooney and another teacher conducting a strip search. It has also produced evidence that Mooney frequently clocked in after 7:15 a.m. or did not clock in at all. But whether to believe the alleged poor performance or retaliation or a combination of both is the motive is a question of fact.

As then-Justice Rehnquist observed, quoting a Nineteenth Century case, in *U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983), "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes," and "[t]he state of a man's mind is as much a fact as the state of his digestion." *Id.*

When the facts are such that one of two motives might be drawn from a particular fact pattern, a jury issue is presented. As stated in *Hunt v. Cromartie*, 526

U.S. 541, 552 (1999):

> Reasonable inferences from the undisputed facts can be drawn in favor of a racial motivation finding or in favor of a political motivation finding. The District Court nevertheless concluded that race was the "predominant factor" in the drawing of the district. In doing so, it either credited appellees' asserted inferences over those advanced and supported by appellants or did not give appellants the inference they were due. In any event, it was error in this case for the District Court to resolve the disputed fact of motivation at the summary judgment stage.

*Hunt*, 526 U.S. at 552.

*Hunt*'s holding that the issue of motive is for the jury to decide has long been settled law.  See *Sioux City & P. R. Co. v. Stout*, 84 U.S. 657, 664 (1873) ("It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge"); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (the comparative weighing of conflicting evidence and inferences is a core jury responsibility).[7]  Of course, if one motive was retaliation, Defendant is liable regardless of whether there was were other motives.  *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 287 (1977); *Smith v. Xerox Corp.*, 602 F.3d 320, 326 (5th Cir. 2010).  Moreover, even if Mooney were a poor performer, a jury could still

---

[7] *Anderson* cited with approval *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970), which held that it "would be up to a jury to infer from the circumstances whether a restaurant and a police officer had reached an agreement to arrest plaintiff when the police arrested her immediately after she left the store.

decide that a more likely reason for the termination decision was retaliation. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004); *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). By holding that Mooney was fired <u>only</u> because of budget cuts and performance issues, the district court has "impermissibly substituted its judgment concerning the weight of the evidence for the jury's." *Reeves*, 530 U.S. at 153. Accordingly, summary judgment should be reversed and this case remanded for a trial by jury.

<u>CONCLUSION</u>

The grant of summary judgment should be reversed.

Respectfully submitted, this the 26th day of December, 2012.

WAIDE & ASSOCIATES, P.A.

BY: */s/ Jim Waide*
JIM WAIDE
MS BAR NO. 6857

WAIDE AND ASSOCIATES, P.A.
ATTORNEYS AT LAW
POST OFFICE BOX 1357
TUPELO, MISSISSIPPI 38802
TELEPHONE: 662-842-7324
FACSIMILE: 662-842-8056
EMAIL: waide@waidelaw.com

Attorneys for Appellant

## CERTIFICATE OF SERVICE

This will certify that undersigned counsel for Plaintiff-Appellant has this day filed the above and foregoing **Brief of Appellant** with the Clerk of the Court, utilizing this Court's electronic case data filing system (CM/ECF), which sent notification of such filing to the following:

Stephen P. Spencer, Esq.
sspencer@mitchellmcnutt.com

THIS the 26th day of December, 2012.

*/s/ Jim Waide*
JIM WAIDE

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 4,141 words, excluding the parts exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Corel WordPerfect Office X3, in 14-point Times New Roman font (except for footnotes, which are in 12-point Times New Roman font, as permitted by Fifth Circuit Rule 32.1).

3.      The undersigned understands a material misrepresentation in completing this certificate or circumvention of the type-volume limits in FED. R. APP. P. 32(a)(7), the typeface requirements of FED. R. APP. P. 32(a)(5), or the type style requirements of FED. R. APP. P. 32(a)(6) may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

SO CERTIFIED, this the 26th day of December, 2012.


_s/ Jim Waide_____
JIM WAIDE
Attorney for Appellant